**No. 23-2133**

In the

# United States Court of Appeals
## For the Fourth Circuit

———————————

ANGELITA BAILEY,
on her own behalf and on behalf of all others similarly situated,

*Plaintiff-Appellee,*

v.

MERCURY FINANCIAL, LLC,

*Defendant-Appellant.*

———————————

On Appeal from the United States District Court
for the District of Maryland
Honorable Deborah K. Chasanow, Senior District Judge
Case No. 8:23-cv-00827-DKC

———————————

**OPENING BRIEF OF APPELLANT**

———————————

Matthew A. Fitzgerald
Bryan A. Fratkin
Katherine E. Lehnen
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4716
F: (804) 698-2251

March 8, 2024

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-2133__        Caption: __Angelita Bailey v. Mercury Financial, LLC__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Mercury Financial, LLC__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                   ☑YES ☐NO
      If yes, identify all parent corporations, including all generations of parent corporations:

      Mercury Financial, LLC, a Delaware limited liability company, is a wholly-owned subsidiary of Mercury Financial Intermediate LLC, which is also a Delaware limited liability company. Mercury Financial Intermediate LLC is a wholly-owned subsidiary of Mercury Financial Holdings LLC, a Delaware limited liability company.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?   ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Matthew A. Fitzgerald _____      Date: _____3/8/2024_____

Counsel for: Mercury Financial, LLC _____

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................... 1

JURISDICTIONAL STATEMENT ................................................. 3

ISSUES PRESENTED.................................................................. 3

STATEMENT OF THE CASE........................................................ 4

SUMMARY OF ARGUMENT ...................................................... 7

STANDARD OF REVIEW ........................................................... 9

ARGUMENT ............................................................................... 9

I. The arbitration provision is enforceable because Mercury promised to provide notice of changes as Maryland law requires. ............................... 9

 A. Maryland law invalidates arbitration agreements that reserve a right to make unilateral changes without notice. ................................ 9

 B. The *Cheek* rule triggers Mercury's advance written notice obligation, so the arbitration provision is enforceable. ..................... 11

 C. Mercury's promise to provide notice supplies consideration to bind it to the arbitration provision.................................................... 15

 D. Mercury never silently "conceded" that Maryland law does not require notice of unilateral changes to arbitration agreements. ......... 19

II. Because Bailey challenges the agreement's enforceability, not its formation, her dispute must be arbitrated under the delegation clause........ 21

III. Alternatively, Bailey effectively challenges the entire cardmember agreement, which is also an issue for an arbitrator. ................................... 25

CONCLUSION ............................................................................ 30

ORAL ARGUMENT STATEMENT ................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amos v. Amazon Logistics, Inc.*,
　74 F.4th 591 (4th Cir. 2023) ...................................................................3, 26, 27

*Arnold v. HomeAway, Inc.*,
　890 F.3d 546 (5th Cir. 2018) ........................................................................24, 29

*Aviles v. Russell Stover Candies, Inc.*,
　559 F. App'x 413 (5th Cir. 2014) .......................................................................29

*Bailey v. Thompson Creek Window Co.*,
　No. 21-2345, 2023 WL 4787443 (4th Cir. July 27, 2023) ................................16

*Brent v. Priority 1 Auto. Grp., BMW of Rockville*,
　No. PWG-14-1705, 2016 WL 9724975 (D. Md. Aug. 4, 2016) .......................13

*Harby ex rel. Brooks v. Wachovia Bank, N.A.*,
　915 A.2d 462 (Md. Ct. Spec. App. 2007) ..........................................................17

*Buckeye Check Cashing, Inc. v. Cardegna*,
　546 U.S. 440 (2006).................................................................9, 22, 23, 26, 28, 30

*Caire v. Conifer Value Based Care, LLC*,
　982 F. Supp. 2d 582 (D. Md. 2013).....................................................................13

*Cheek v. United Healthcare of Mid-Atl., Inc.*,
　835 A.2d 656 (Md. 2003) .............................................................1, 7, 10, 24, 27

*Coady v. Nationwide Motor Sales Corp.*,
　32 F.4th 288 (4th Cir. 2022) ............................................................10, 13, 19, 25

*Coleman v. Qwest Commc'ns Corp.*,
　No. 3:02-CV-2428, 2003 WL 22388482 (N.D. Tex. Sept. 30, 2003)...............14

*Dumais v. Am. Golf Corp.*,
　299 F.3d 1216 (10th Cir. 2002) ..........................................................................16

*El-Hage v. Comerica Bank*,
　No. 20-10294, 2020 WL 7389041 (E.D. Mich. Dec. 16, 2020)........................14

*Floss v. Ryan's Fam. Steak Houses, Inc.*,
  211 F.3d 306 (6th Cir. 2000) ................................................................16

*Harford Cnty. v. Town of Bel Air*,
  704 A.2d 421 (Md. 1998) ....................................................................18

*Hill v. Peoplesoft USA, Inc.*,
  412 F.3d 540 (4th Cir. 2005) ........................................................11, 13

*Holloman v. Circuit City Stores, Inc.*,
  894 A.2d 547 (Md. 2006) ...............................................................17, 18

*Johnson v. Cont'l Fin. Co., LLC*,
  No. 8:22-CV-02001-PX, 2023 WL 5804281 (D. Md. Sept. 7, 2023) ...............13

*Larsen v. Citibank FSB*,
  871 F.3d 1295 (11th Cir. 2017) ..........................................................14

*Liberty Mut. Fire Ins. Co. v. JT Walker Indus., Inc.*,
  554 F. App'x 176 (4th Cir. 2014) ........................................................20

*Malbon v. Pa. Millers Mut. Ins. Co.*,
  636 F.2d 936 (4th Cir. 1980) ..............................................................20

*Mbongo v. Robinhood Markets, Inc.*,
  2022 WL 621797 (Md. Ct. Spec. App. Mar. 3, 2022)...............................17

*Noohi v. Toll Bros.*,
  708 F.3d 599 (4th Cir. 2013) ..................................................9, 10, 25

*Preston v. Ferrer*,
  552 U.S. 346 (2008)............................................................................26

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967)........................................................................9, 28

*Questar Builders, Inc. v. CB Flooring, LLC*,
  978 A.2d 651 (Md. 2009) ....................................................................12

*Raley v. Whitestake Improvements LLC*,
  625 F. Supp. 3d 457 (D. Md. 2022)....................................................13

*Rent-A-Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010)...................................................................22, 26, 28

*In re StockX Customer Data Sec. Breach Litig.*,
  19 F.4th 873 (6th Cir. 2021) .......................................................28, 29

*Walther v. Sovereign Bank*,
  872 A.2d 735 (Md. 2005) ..................................................................16

**Statutes**

9 U.S.C. § 3 ...........................................................................................3

9 U.S.C. § 4 ...........................................................................................3

9 U.S.C. § 16 .........................................................................................3

28 U.S.C. § 1332(d) ..............................................................................3

**Rules**

Loc. R. 105.2(a) ...................................................................................21

**INTRODUCTION**

In this case, a cardmember and arbitration agreement stated that Mercury Financial could change the terms of the agreement, but that "when required by law, we will provide advance written notice of any changes and any right to reject the changes." JA123. Maryland law indeed requires notice of changes to create an enforceable agreement.

The district court cited and quoted the governing Maryland case law. JA296-297. Yet the district court then oddly announced that no Maryland law required notice. JA296-299. And in an even more head-scratching turn, the court then ruled that therefore the agreement itself did not require notice, and for that reason it was unenforceable. The court concluded that no binding arbitration agreement had been formed.

The district court's reasoning does not add up on its face. If Maryland law *does* require notice, then the agreement promises that notice, and so makes an enforceable promise. If Maryland law *does not* require notice, then the agreement would be enforceable without it. This Court can correct the decision below in any of three ways:

First, most simply, all agree that Maryland law requires notice of changes to the terms of an arbitration agreement to enforce that agreement. *See Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656, 658 (Md. 2003) (an agreement

1

that allows changes "with or without notice" was unenforceable).  Thus, under Maryland law, Mercury's commitment to give notice "when required by law," and in fact to do even better with "advance written notice" and an opportunity to reject the change, is a perfectly good binding promise.  That binding promise creates an enforceable arbitration agreement, and the case should be compelled to arbitration. This case is that simple, and no further analysis is necessary.

Second, in the alternative, Bailey's challenge to Mercury's arbitration agreement is best seen as an *enforceability*, not a *formation*, challenge.  For that reason, the agreement's delegation provision sends this dispute to the arbitrator. JA127 (specifically sending to arbitration "any . . . dispute concerning the . . . enforceability, revocation or scope of this [arbitration] Clause").  Bailey does not dispute that she entered into the cardmember agreement, used her card, and borrowed money under the agreement for many months.  Her current argument is really an enforceability dispute—she claims that one of the terms inside that cardmember agreement (the change-in-terms provision) turned out to invalidate the arbitration provision.

Third, if the analysis even reaches this far, if the Court does see Bailey's argument as a "formation" challenge, then it properly applies to the entire agreement, not just the arbitration provision.  After all, the change-in-terms provision applies to every part of the cardmember agreement, not just the

arbitration provision. Under the Supreme Court's decisions in *Prima Paint* and *Buckeye*, this type of challenge to the entire agreement must go to arbitration under the delegation clause. And this Court has ruled that challenges exactly like this one must be referred to the arbitrator under delegation provisions. *Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 595 n.4 (4th Cir. 2023).

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under the Class Action Fairness Act ("CAFA") because this is a class action consisting of more than 100 putative class members; the citizenship of at least one plaintiff is different from that of at least one defendant; and the matter in controversy exceeds $5 million. *See* 28 U.S.C. § 1332(d). This Court has appellate jurisdiction under 9 U.S.C. § 16(a)(1)(A)–(B) because this is an appeal of an order denying a petition to compel arbitration and stay proceedings under 9 U.S.C. §§ 3–4.

## ISSUES PRESENTED

I.      Does Maryland law trigger Mercury's promise to provide advance written notice of changes to the arbitration provision "when required by law," thus rendering the provision enforceable?  (Yes.)

II.     Alternatively, was the district court required to send Bailey's dispute to an arbitrator because the broader cardmember agreement was irrefutably formed, and

it delegated to an arbitrator all enforceability and validity disputes about the arbitration provision?  (Yes.)

III.    As a second alternative, was the district court required to send Bailey's dispute to an arbitrator under the delegation clause because her challenge to the change-in-terms clause actually pertained to the cardmember agreement as a whole, not just the arbitration provision?  (Yes.)

## STATEMENT OF THE CASE

In 2006, Bailey opened a Juniper Mastercard credit card account issued by Barclays Bank Delaware.  JA101.  Barclays later sold Bailey's Juniper account to First Bank & Trust, Brookings, SD ("FB&T").  JA100; JA101; JA258.  Since Mercury services consumer credit cards issued by FB&T, Mercury serviced Bailey's account for FB&T after the sale.  JA100; JA257; JA260.  In July 2018, Mercury notified Bailey of the sale and that her account would be converted to a Mercury Mastercard account.  JA102; JA115-119.

Following the conversion, the cardmember agreement governed Bailey's relationship with Mercury.  JA102; JA122-129.  On September 23, 2018, Bailey activated her FB&T-issued credit card, and she began making purchases with the card on November 6, 2018.  JA103.  Bailey thus accepted the cardmember agreement by using her account.  JA123 ("You accept this Agreement if you use the Account.").

The cardmember agreement contains an arbitration provision. JA126-129. The Provision also contains a class action waiver. JA126. The introduction to the arbitration provision explains the agreement, class waiver, and ability to opt out:

> By accepting this Agreement, you agree to this Jury Trial Waiver and Arbitration Clause ("Clause"). This Clause is in question and answer form to make it easier to understand. Even so, this Clause is part of this Agreement and is legally binding. **Under this Clause, you waive the right to have any Dispute heard by a judge and jury and you waive the right to bring or participate in a class, representative or private attorney general action regarding any Dispute. You may "opt out" of this Clause in the manner set out in the section of the Clause entitled "Is this Clause Required."**

JA126 (emphasis in original).[1] Bailey did not opt out of the arbitration provision. JA103.

The arbitration provision applies to "All Disputes," including "any claim, counterclaim, cross-claim, complaint, cross-complaint, controversy, or dispute between you or us arising under, out of, or directly or indirectly related to your application, this Agreement or your relationship with us." JA127. It also refers to an arbitrator any disputes "concerning the formation, existence, validity, enforceability, revocation or scope" of the arbitration provision ("delegation clause"). JA127.

---

[1] The cardmember agreement has been revised since Mercury began servicing Bailey's account, but the arbitration provision has not changed. JA102-103.

The arbitration provision governs FB&T and "Related Parties," which include FB&T's agents, like Mercury, and "any person or entity that you[] or we assert is potentially liable for the conduct at issue in a Dispute."  JA123; JA127; JA257; JA258; JA283.  This aligns with FB&T's ability to assign its rights and obligations under the agreement.  JA126.

The cardmember agreement also contains a section entitled, "Changes to Your Account," which provides,

> The rates, fees and terms of this Agreement (including its Jury Trial Waiver and Arbitration Clause), may change and we may add or delete any term.  **When required by law, we will provide advance written notice of any changes and any right to reject the changes**.

JA123 (emphasis added) ("change-in-terms clause").  Finally, South Dakota law governs the cardmember agreement.  JA126.

Bailey does not dispute that the cardmember agreement exists.  She acknowledges that she "accepted the credit card agreement" for her Mercury account.  JA19; JA146.  Her monthly account statements confirm she regularly made purchases with her Mercury credit card and made payments until March 2020.  JA186-212; *see also* JA146 (discussing how "Mercury repeatedly extended consumer credit to Plaintiff" and her monthly account balances); JA20-22 (same).  After Bailey defaulted on her payment obligations, the purchaser of her charged-off account brought a state court action against her.  JA180-182; JA258.

Bailey then sued Mercury in Maryland state court, alleging that Mercury made loans to her and a putative class without the required Maryland licensing. JA14-34. Mercury removed the case to federal court under CAFA jurisdiction, JA4-9, and moved to compel arbitration under the arbitration provision. JA77-98. The district court denied Mercury's motion to compel, finding the parties' agreement to arbitrate "illusory" under Maryland law. JA282-301. Mercury timely appealed. JA303-304.

## SUMMARY OF ARGUMENT

The district court refused to compel arbitration because it erroneously decided that Mercury's promise to provide advance written notice of changes "when required by law" rendered the arbitration provision illusory. The district court's decision should be reversed for three independent reasons.

First, the arbitration provision is valid and must be enforced. Maryland's *Cheek* rule renders arbitration agreements unenforceable if one party can change the agreement "with or without notice" because that party's promise to arbitrate is illusory. *Cheek*, 835 A.2d at 658. But Mercury's change-in-terms clause differs from *Cheek* because Mercury promises, "When required by law, we will provide advance written notice of any changes." JA123. The district court—even after citing the *Cheek* rule—failed to recognize that *Cheek* is the "law" that does exactly what the change-in-terms clause contemplates: requires notice of changes to

7

arbitration provisions to make them enforceable. Thus, Mercury promised under *Cheek* to provide *advance written* notice of changes to the arbitration provision. This binding promise provides the consideration that Maryland law requires to make the arbitration provision enforceable.

Instead, the district court relied on *Cheek* to disregard an arbitration provision that *Cheek* instead makes enforceable. In doing so, the court improperly applied state law to disfavor an arbitration agreement. Thus, on this basis alone— that the arbitration provision was enforceable under *Cheek*—the district court should be reversed.

Second, alternatively, the district court should not have decided Bailey's challenge in the first place because Bailey concedes the cardmember agreement was formed. That agreement contains a delegation clause requiring an arbitrator to decide disputes about the "enforceability, revocation or scope" of the arbitration provision. JA127. Thus, because Bailey challenged only the agreement's enforceability, not its formation, her challenge should have been referred to arbitration per the delegation clause. This is an independent basis to reverse the decision below.

Third, as another alternative, an arbitrator must decide Bailey's dispute because it concerns the entire cardmember agreement. Bailey uses the change-in-terms clause to challenge the arbitration provision as illusory, but that clause

applies to all terms in the cardmember agreement.  As a result, Bailey necessarily

challenges the entire agreement.  Such a challenge, under *Prima Paint* and

*Buckeye*, presents an issue for an arbitrator, not the district court.  *See Prima Paint*

*Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967); *Buckeye Check*

*Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1, 448–49 (2006).

     For any of these reasons, the district court's decision should be reversed.

## STANDARD OF REVIEW

     This Court reviews de novo a district court's determination of arbitrability,

giving due regard to federal policy favoring arbitration.  *Noohi v. Toll Bros.*, 708

F.3d 599, 605 (4th Cir. 2013).

## ARGUMENT

I.    **The arbitration provision is enforceable because Mercury promised to
provide notice of changes as Maryland law requires.**

    A.    **Maryland law invalidates arbitration agreements that reserve a
right to make unilateral changes without notice.**

     Under Maryland's *Cheek* rule, an arbitration agreement is not enforceable if

it can be unilaterally modified without notice.  This Court and Maryland courts

have repeatedly recognized this rule and applied *Cheek* to determine whether

arbitration provisions can be enforced under Maryland law.

     In *Cheek*, Maryland's high court decided that an arbitration agreement

lacked consideration because it allowed one party, United Health, to "alter, amend,

modify, or revoke the [Arbitration] Policy at its sole and absolute discretion at any

time *with or without notice*." 835 A.2d at 658 (emphasis added). The court

determined that the arbitration agreement required its own consideration apart from

the underlying contract. *Id.* at 667. Any promise can serve as that consideration,

but only if the promise is binding; the promise is "illusory" if it "does not actually

bind or obligate the promisor to [do] anything." *Id.* at 662. Applying these

principles, *Cheek* concluded that United Health made "no real promise" because it

could change or revoke the agreement to arbitrate "with or without notice,"

rendering its agreement to arbitrate illusory. *Id.* at 662, 664. Thus, the arbitration

agreement was "unenforceable for lack of consideration." *Id.* at 664, 669.

          This Court has dubbed this tenet of Maryland law the "*Cheek* rule." *Noohi*,

708 F.3d at 611. The *Cheek* rule has been addressed in this Court several times.

For instance, in *Noohi*, the Court examined the *Cheek* rule, rejected several

objections to it, and concluded that an arbitration agreement that bound only one

party "lack[ed] mutuality of consideration" and was unenforceable. *Id.* at 609–14.

          In *Coady*, the parties readily agreed that any arbitration provision allowing

changes "with or without notice" renders an arbitration agreement illusory. *See*

*Coady v. Nationwide Motor Sales Corp.*, 32 F.4th 288, 290, 292 (4th Cir. 2022)

(finding an agreement unenforceable under *Cheek* because the change-in-terms

provision which did not require any notice did in fact apply to the arbitration

clause). On the other hand, an arbitration agreement was saved from invalidity

under *Cheek* because a clause allowing changes "without notice" did not apply to the arbitration clause specifically. *Hill v. Peoplesoft USA, Inc*., 412 F.3d 540, 543 (4th Cir. 2005).

### B. The *Cheek* rule triggers Mercury's advance written notice obligation, so the arbitration provision is enforceable.

Mercury promised to provide advance written notice of changes to the arbitration provision when required by law. JA123. Thus, the district court reasonably set out to determine whether Maryland law requires notice. JA288.

The court began by citing *Cheek* and observing that under Maryland law, "[a]n arbitration agreement is illusory when it is subject to a change-in-terms provision empowering one party to decide whether to arbitrate a dispute." JA296-297. Yet the court inexplicably concluded that "Maryland law does not require notice of such changes." JA296-298. The court failed to recognize that *Cheek* is the "law" that "require[s]" advance written notice of changes to the arbitration provision, rendering it enforceable.

Contrary to the district court's view, the phrase "when required by law" is not meaningless. It addresses scenarios like this one: when the law would invalidate the parties' agreement to arbitrate if Mercury did not promise to provide notice of changes. Because Maryland law under *Cheek* invalidates arbitration agreements that can be unilaterally changed without notice, "when required by

11

law" triggers an obligation by Mercury to give notice.  JA123 (also offering an opportunity to reject changes).

Put differently, if the arbitration agreement just said that Mercury could change its terms at any time "without notice," then it would violate *Cheek* and be unenforceable in Maryland.  (It would still be enforceable in most other states, which allow consideration from other parts of the agreement to support the arbitration provision).  But rather than allowing changes "without notice," this agreement expressly provides for notice—and not just notice, but advance written notice, and an opportunity to object—"when required by law."  The added term, "when required by law," is exactly what the agreement *should say* to ensure it is enforceable in Maryland.

"When required by law" is best read to mean "when required by law *to make this agreement enforceable*."  After all, Maryland law specifically instructs courts to construe contracts to make them enforceable, not illusory.  "Courts generally prefer a construction of a contract which will make the contract effective rather than one which will make it illusory or unenforceable."  *Questar Builders, Inc. v. CB Flooring, LLC*, 978 A.2d 651, 670 (Md. 2009) (applying *Cheek*).

No Maryland case has found a promise to provide notice "when required by law" illusory.  And the federal cases invalidating arbitration agreements under

12

*Cheek* have involved unilateral changes "with or without notice," just like *Cheek*.[2]

In *Coady*, this Court found that a clause allowing changes "with or without notice"

applied to the parties' arbitration agreement, rendering the defendant's "promise to

arbitrate illusory and unenforceable under Maryland law." *Coady*, 32 F.4th at 290,

292–93. The change clause in *Hill* similarly allowed unilateral change "without

notice," and the parties' arbitration agreement survived only because the change

clause did not apply to it. *Hill*, 412 F.3d at 543; *see also Raley v. Whitestake*

*Improvements LLC*, 625 F. Supp. 3d 457, 465 (D. Md. 2022) (agreement allowing

changes "without notice" was unenforceable); *Caire v. Conifer Value Based Care,*

*LLC*, 982 F. Supp. 2d 582, 594 (D. Md. 2013) (agreement providing for no notice

of changes unenforceable); *see also Brent v. Priority 1 Auto. Grp., BMW of*

*Rockville*, No. PWG-14-1705, 2016 WL 9724975, at *8 (D. Md. Aug. 4, 2016)

(agreement allowing changes "with or without notice" unenforceable).

    Nor is it novel for state case law like *Cheek* to supply the "law" that triggers

a promise to notify the other party of changes. A provision allowing changes "with

or without notice *to the fullest extent permitted by law*" was enforceable under

---

[2] The one exception is a district court case involving an analogous putative class of
plaintiffs, represented by the same firm, that invalidated an agreement with similar
language in an unpublished opinion. *Johnson v. Cont'l Fin. Co., LLC*, No. 8:22-
CV-02001-PX, 2023 WL 5804281 (D. Md. Sept. 7, 2023). That decision is also
currently on appeal to this Court. Dkt. Nos. 23-2047, 23-2049 (opening brief due
March 22, 2024).

Texas precedent, which did not allow arbitration provisions to be modified "without prior notice." *Coleman v. Qwest Commc'ns Corp.*, No. 3:02-CV-2428, 2003 WL 22388482, at *3 (N.D. Tex. Sept. 30, 2003). The court reasoned that the defendant could not change terms "without giving notice *as required by law*," meaning the arbitration agreement was not illusory. *Id.* (emphasis added). Similarly, an Ohio decision holding that "an arbitration provision is enforceable if the right of modification is *limited by a notice or timing provision*" rendered enforceable a cardmember agreement that promised notice of changes "in the manner *required by law*." *El-Hage v. Comerica Bank*, No. 20-10294, 2020 WL 7389041, at *5 (E.D. Mich. Dec. 16, 2020); *see also Larsen v. Citibank FSB*, 871 F.3d 1295, 1317–18 (11th Cir. 2017) (notice of changes "as required under applicable law" was not unconscionable in part because the obligation to arbitrate "could not be significantly modified at [the defendant's] whim").

The district court's treatment of Maryland law does not add up. In the cardmember agreement, both Bailey and Mercury promised to arbitrate. Mercury reserved the right to make changes to the agreement, but promised advance written notice and an opportunity to reject changes "when required by law." In the district court's view, no Maryland law requires notice, yet at the same time Maryland law invalidates the entire arbitration agreement without it. Under that view, no arbitration agreement ever existed here. Not even if Bailey herself wanted to

14

arbitrate could she exercise that right.  Nor does it matter under that view that Mercury never did make any change to the arbitration agreement during the relevant time, much less a change without notice or a change it wanted to enforce against Bailey.  The district court opinion seemed to think that Mercury could make any change it wanted, at any time, without notice.   But the arbitration agreement, as written, does not allow that.  It allows changes (of which there were none) only following the notice required by Maryland law.  The district court's ruling—that an arbitration agreement that specifically promises to provide whatever notice is legally required actually promises nothing at all—is circular.

The district court was left with a circular analysis because it missed that *Cheek is* the "law" that invokes Mercury's promise to provide notice of changes to the arbitration provision.  With that promise, even applying Maryland's unique contract rule, the arbitration agreement is supported by mutual consideration and is enforceable.

### C.    Mercury's promise to provide notice supplies consideration to bind it to the arbitration provision.

Given that Maryland law triggers Mercury's obligation to provide notice, Mercury sufficiently bound itself to arbitrate by promising to provide notice of any changes.  In fact, Mercury did even better—it promised to provide advance written notice and an opportunity to object.  JA123.

Parties' obligations in an arbitration agreement need not be equal or exactly reciprocal. *Walther v. Sovereign Bank*, 872 A.2d 735, 748 (Md. 2005). Only when one party "fail[ed] to promise to do anything" does an agreement become illusory and unenforceable. *Bailey v. Thompson Creek Window Co.*, No. 21-2345, 2023 WL 4787443, at *1 (4th Cir. July 27, 2023) (citing *Walther*, 872 A.2d at 747–48).

The promise of "notice" alone thus satisfies *Cheek*. Providing notice limits Mercury's discretion to change the arbitration provision, creating a binding exchange of promises. That the promised notice would be "written" and that it would come with a "right to reject the changes," make the point even clearer. Mercury's notice of changes to the arbitration provision would allow Bailey to react to any change by, for instance, objecting or terminating her relationship with Mercury.

These limitations emphasize that Mercury was bound by the agreement to arbitrate. This case is readily distinguishable from cases in which one party reserved for itself an unfettered right to make any change at any time without notice. *E.g.*, *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) (arbitration agreement illusory where one party had "unfettered right" to alter it without notice) (collecting cases); *Floss v. Ryan's Fam. Steak Houses, Inc.*, 211 F.3d 306 (6th Cir. 2000) (arbitration agreement unenforceable where defendants could alter arbitration rules and procedures without notice or consent).

Courts have recognized that all *Cheek* requires is a binding promise from both sides. For instance, an arbitration agreement complied with *Cheek* because it provided for 30-day written notice of changes to be posted in the defendant's stores. *Holloman v. Circuit City Stores, Inc.*, 894 A.2d 547, 550 (Md. 2006). As a result, the defendant did not have "unfettered discretion to alter or rescind the arbitration agreement without notice." *Id.* at 554. The notice promise created a binding obligation that made the agreement enforceable. *Id.*

Other cases have agreed that any promise a defendant makes that constrains its ability to change the arbitration clause satisfies *Cheek*. A promise to provide 30 days' notice of changes sufficiently bound a defendant to an arbitration agreement, even though notice was required only if the change was not in the other party's "favor." *Harby ex rel. Brooks v. Wachovia Bank, N.A*., 915 A.2d 462, 469 (Md. Ct. Spec. App. 2007). And a defendant's promise to post changes to its website, which the other party agreed to check for updates, provided sufficient consideration to make their arbitration agreement enforceable. *Mbongo v. Robinhood Markets, Inc*., 2022 WL 621797, at *7 (Md. Ct. Spec. App. Mar. 3, 2022).

The district court here misconstrued these precedents. The district court suggested *Holloman* held that "[n]otice of unilateral changes alone, however, does not constitute adequate consideration without additional limitations." JA297.

17

Setting aside that Mercury promised more than notice "alone," the district court misconstrued *Holloman*.  *See Holloman*, 894 A.2d at 554 (rejecting an argument that "in our opinion in *Cheek*, we held that 'notice does not provide consideration in Maryland'").  *Holloman*, like all cases applying *Cheek*, simply considered whether an agreement with certain notice requirements was enforceable under *Cheek*, and it was.  While the change provisions in *Holloman* happened to be detailed, *Holloman* does not mean that lesser detail cannot serve as consideration. That the requirements in *Holloman* differ from those in Mercury's cardmember agreement does not change the result here.

In sum, all that *Cheek* requires to create a binding arbitration agreement is a real, actual promise made by each side.  If each side has promised something, then consideration is present and the agreement is enforceable.  *See Harford Cnty. v. Town of Bel Air*, 704 A.2d 421, 430 (Md. 1998) (holding that "the undertaking or doing of anything beyond what one is already bound to do, though of the same kind and in the same transaction, is a good consideration") (citing *Williston on Contracts*).

Promising notice, including notice "when required by law," is exactly such a promise.  Under the *Cheek* rule, Mercury agreed to provide advance written notice and a right to reject any changes.  Mercury's commitments are ample consideration for the arbitration provision, and it should be enforced accordingly.

18

**D.    Mercury never silently "conceded" that Maryland law does not require notice of unilateral changes to arbitration agreements.**

A footnote in the district court's opinion asserts that Mercury implicitly "concede[d]," that "Maryland law does not require notice of unilateral changes" by failing to argue it in the reply brief.  JA298.  That assertion is wrong for at least three reasons.

First, it is a headscratcher for the district court to say that Mercury "conceded" this point of Maryland law by failing to bring it to the court's attention.  JA298.  The district court's opinion discusses at length the relevant Maryland case law.

The district court accused Mercury of "fail[ing] to provide any law requiring notice of unilateral modifications to arbitration agreements."  JA300.  But just two sentences later, the district court quoted the relevant Maryland law: "Because the Modification Clause gives the defendant the right to change or abolish the Arbitration Agreement's policies, procedures, and benefits without notice, the Arbitration Agreement is illusory under Maryland law."  JA300 (quoting *Coady*, 32 F.4th at 293).  The district court clearly understood that under Maryland law, an "arbitration agreement is illusory when it is subject to a change-in-terms provision empowering one party to decide whether to arbitrate a dispute."  JA296-298.  Thus, the district court did not need to search for the applicable Maryland law, and

Mercury did not fail to supply it. The governing law appeared throughout the court's own opinion, not to mention Mercury's briefing.

Second, Mercury consistently argued that the arbitration provision is enforceable under Maryland law. After all, the entire theory of Mercury's motion to compel arbitration was that the arbitration provision in the cardmember agreement was enforceable. JA84-96. In its reply brief below, Mercury had a full section titled "The Arbitration Provision is Not Illusory Under Maryland Law."[3] JA244-248. Mercury cited *Cheek* and pointed out that "when required by law" sets the arbitration provision apart from the agreements in *Cheek* and others that had defied Maryland law by allowing changes without notice. JA244-245. The district court even acknowledged these arguments, recognizing that Mercury contended "the arbitration agreement is not illusory" (JA296), and that the change-in-terms clause was "distinguishable from the one [found unenforceable] in *Cheek*." JA298.

Third, the district court's footnote stated that Mercury supposedly failed to address Maryland law in its reply brief on the motion to compel arbitration. But it

---

[3] Mercury need not articulate every contour of an argument to preserve it. *E.g.*, *Liberty Mut. Fire Ins. Co. v. JT Walker Indus., Inc.*, 554 F. App'x 176, 185 (4th Cir. 2014) (finding issue sufficiently preserved where party identified it even though it later "expand[ed] its reasoning and offer[ed] more specificity"). But even if Mercury had not made the arguments that it did below, the district court's self-contradictory decision to invalidate the arbitration provision makes clear that reversal is required. *See Malbon v. Pa. Millers Mut. Ins. Co*., 636 F.2d 936, 941 (4th Cir. 1980) (reversible error can overcome abandoned argument).

is unclear how Mercury could "concede" an argument raised in an opposition by not addressing it on reply, when reply briefs are not even required. *See* Loc. R. 105.2(a) (permitting "any reply memoranda" to be filed 14 days after the opposition brief). Had Mercury declined to file a reply brief entirely, it would have conceded nothing. Mercury still would be entitled to a ruling on its motion to compel arbitration, which turned on its contention that the arbitration and delegation provisions were enforceable.

Ultimately, the requisite "Maryland law" appeared throughout the district court's own opinion as well as Mercury's briefing. In sum, because Mercury's promise to arbitrate is enforceable under *Cheek*, the district court should have compelled arbitration. On this basis alone, the decision below should be reversed, and this Court's analysis can stop here.

## II.    Because Bailey challenges the agreement's enforceability, not its formation, her dispute must be arbitrated under the delegation clause.

Alternatively, this Court can reverse without reaching whether the parties' agreement is "illusory." The agreement here has a delegation clause which specifically sends to arbitration "any claim, defense or dispute concerning the formation, existence, validity, enforceability, revocation or scope of this [arbitration] Clause." JA127.

21

Thus, under the delegation clause, "enforceability" issues go to the arbitrator, as well as "formation" issues to the maximum extent possible.[4]

Because this dispute is best viewed as addressing the "enforceability" of the arbitration clause, the agreement delegates it to the arbitrator.  *E.g.*, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 65 (2010) (referring to arbitration under a delegation clause an argument that the arbitration provision was unenforceable as unconscionable).

This dispute is about enforceability, not initial contract formation, for two reasons: (1) Bailey's own admissions that she is not challenging the formation of the broader cardmember agreement show that this is not a contract "formation" issue; and (2) precedent has categorized this argument that way.

First, Bailey admits that her cardmember agreement was formed and existed. She acknowledges that she "accepted the credit card agreement" for her Mercury account.  JA19; *see also* JA103 & JA122 (Bailey accepted the cardmember agreement by using her account beginning in November 2018); JA146.  She concedes that she applied for and used that account.  JA19-22.  She claims that

---

[4] True "formation" issues like whether a person ever assented to an agreement at all must be decided by the courts.  *See Buckeye*, 546 U.S. at 444 n.1, 448–49.  But the parties' decision to include "formation" disputes as arbitrable further reflects that disputes like this one—premised on the existence of the cardmember agreement, and where Bailey makes no suggestion that she somehow did not or could not consent to the agreement—belong in arbitration.

"Mercury repeatedly extended consumer credit" to her, and she paid for that credit. JA19-22; *see also* JA146.  Indeed, Bailey's lawsuit centers on her allegations that Mercury extended credit to her and collected payments from her without the alleged necessary licensing.  JA22.  Her merits claim relies on the existence and operation of the cardmember agreement.

Thus, Bailey has made clear that she is trying *not* to challenge the overall cardmember agreement.  JA159 (Bailey "does not challenge the Cardholder Agreements as a whole.").  The district court recognized Bailey's "acceptance of the Cardholder Agreement."  JA294.

Having operated under the cardmember agreement for years, Bailey cannot now plausibly claim it was never *formed*.  After all, Bailey is not denying that she agreed to the contract, or claiming she lacked mental capacity to make a contract. *See Buckeye*, 546 U.S. at 444 n.1, 448–49 (noting classic "formation" issues such as lack of authority, lack of mental capacity, and lack of a signature).

Moreover, the change-in-terms provision applies equally to the entire cardmember agreement.  JA123 ("The rates, fees and terms of this Agreement . . . may change and we may add or delete any term.").  It would make no sense to hold that a general change-in-terms provision inside an admittedly "formed" cardmember agreement means that *one part* of the cardmember agreement (the

23

arbitration provision) was never formed.  It may be *unenforceable*—but the agreement was no doubt *formed*.

Second, on-point precedent has considered the exact argument here an enforceability, not formation, challenge.  In *Arnold v. HomeAway, Inc.*, the Fifth Circuit found that the exact argument Bailey makes here concerned contract enforceability, not formation.  890 F.3d 546, 550–51 (5th Cir. 2018).

In *Arnold*, as here, a plaintiff argued that an arbitration provision was illusory and thus never formed, even though it resided inside a broader, unchallenged agreement.  The court reasoned: "On its surface, an illusoriness challenge would appear to be in the nature of an existence challenge; illusory promises imply lack of adequate consideration, which affects contract formation." *Id.* at 550.  Yet the court observed that the plaintiff did "not dispute the existence of a contract . . . governed by the [other] terms." *Id.* at 551.  Thus, the "allegation that a particular provision of the contract is illusory is properly considered a validity challenge rather than a formation challenge." *Id.*  The *Arnold* court ultimately compelled arbitration under the delegation provision. *Id.* at 554–55.

Beyond *Arnold*, *Cheek* and its family of case law also refer to challenges to arbitration provisions as addressing enforceability.  *Cheek* itself concluded that an arbitration agreement was "*unenforceable*" because it lacked consideration. *Cheek*, 835 A.2d at 664, 669.  This Court has also used the term "unenforceable"

24

repeatedly to address application of the *Cheek* rule.  *See Coady*, 32 F.4th at 293 (considering whether arbitration agreement was "unenforceable under Maryland law"); *Noohi*, 708 F.3d at 605 (using the term "unenforceable" at least six times in applying the *Cheek* rule).  When there is no delegation clause at issue to send "enforceability" arguments to arbitration, this Court has freely regarded Bailey's exact contention here as an enforceability (not formation) challenge.

In sum, there is no question that the cardmember agreement was formed or that it contains a delegation clause referring disputes about the arbitration provision to an arbitrator.  Bailey's challenge to the arbitration provision is an enforceability challenge that must be compelled to arbitration.

## III.    Alternatively, Bailey effectively challenges the entire cardmember agreement, which is also an issue for an arbitrator.

Bailey admits her cardholder relationship with Mercury and that she assented to the agreement.  She argues that one of the terms that she agreed to—the change-in-terms provision—destroys consideration and thus the arbitration agreement itself fails.  Even if this Court were to consider this a kind of "formation" challenge, JA291, it still must go to arbitration under the delegation clause.  The reason is that Bailey is challenging a single term inside the agreement that, if her view holds, voids the entire agreement.  Regardless of Bailey's efforts to affirm the rest of the cardmember agreement, her challenge properly viewed assails the entire contract.  Under *Prima Paint*, *Buckeye*, and this Court's recent

*Amos* decision, legal challenges like this one to the contract as a whole must go to arbitration.  *See Amos*, 74 F.4th at 595 n.4.

The Supreme Court has long held that under delegation provisions, "questions concerning the validity of the entire contract are to be resolved by the arbitrator in the first instance, not by a federal or state court." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008).  Thus, "a party's challenge . . . to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center*, 561 U.S. at 70.  This rule applies equally when the "contract as a whole" is an arbitration agreement, and the "arbitration clause" is a delegation clause assigning threshold issues to an arbitrator.  *Buckeye*, 546 U.S. at 446.  In *Rent-A-Center*, for instance, the plaintiff challenged an entire arbitration contract as unconscionable but made no unique challenge to the delegation provision within it.  561 U.S. at 72.  The Court thus enforced the delegation provision and sent the case to arbitration to address the unconscionability issue.  The same thing should happen here.

In fact, this Court has already decided that the argument Bailey makes here "relate[s] to the Agreement as a whole" and is "precisely the sort of argument that . . . must be deferred for arbitration." *Amos*, 74 F.4th at 595 n.4.  In *Amos*, the plaintiffs contended that an arbitration clause was "illusory" because the defendant had reserved a "unilateral ability to modify certain portions of the Agreement." *Id.*

26

This Court was "satisfied that . . . the plaintiffs' contract defense[] relate[s] to the Agreement as a whole – their position is that the Agreement itself 'failed at the contract formation stage as illusory and unconscionable.'" *Id*. This Court then held: "That is precisely the sort of argument that, as the district court rightly explained, must be deferred for arbitration." *Id.*

As in *Amos*, Bailey's challenge is not specific to the arbitration provision (and certainly not the delegation clause). Unlike in *Cheek*, where the change-in-terms provision applied only to the arbitration clause, here the change-in-terms clause applies to all "rates, fees and terms of this [Cardmember] Agreement." *Cheek*, 835 A.2d at 659–60; JA123.

Bailey offers no real reason beyond her own say-so why the rest of the cardmember agreement would be validly formed, but the arbitration provision would not. In Bailey's view, Mercury could have changed *any of* the agreement's other terms without notice, rendering its promises in those terms equally illusory. Just as Bailey's "challenge to whether the parties have agreed to arbitrate the dispute *necessarily* encompasses the issue of whether the parties have agreed to delegate arbitrability," Bailey's challenge "necessarily encompasses" the entire contract too. JA289.

It does not matter that Bailey's challenge to the entire cardmember agreement *also* concerns the arbitration provision. Just like in *Buckeye*, the crux of

Bailey's argument is that one provision in the contract renders "the contract as a whole (including its arbitration provision)" void – there, by a usurious finance change, and here by a change-in-terms clause. *Buckeye*, 546 U.S. at 444 (claim that arbitration provision was void for illegality challenged entire agreement and thus could not be decided by a court). Likewise, in *Prima Paint*, "where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract," the court "nonetheless require[d] the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene." *Rent-A-Center*, 561 U.S. at 71 (citing *Prima Paint*, 388 U.S. at 403–04 (a court cannot decide a fraud in the inducement claim, which concerns the "making of" an agreement, if it pertains to the whole contract)).

Under these precedents, because Bailey does not "challenge[] the delegation provision specifically," the district court had to "treat it as valid," and leave Bailey's "challenge to the validity of the agreement as a whole for the arbitrator." *Rent-A-Center*, 561 U.S. at 72. Where a contract existed with a valid delegation clause, the Sixth Circuit found it had "no business weighing" whether a change-in-terms provision applicable to the entire contract rendered the arbitration agreement illusory. *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 886–87 (6th Cir. 2021). Like Bailey, the plaintiffs in that case "failed to explain how the

change-in-terms provision operates on the delegation provision any differently than it operates on other provisions." *Id.* at 886.

Likewise, the Fifth Circuit confirmed that an arbitrator must decide whether the ability to modify "any terms or conditions without providing notice" rendered *only* the delegation clause illusory. *Arnold*, 890 F.3d at 549, 554. There, as here, the challenge was not "specific to the delegation clause," meaning that the clause had to be enforced and the matter referred to arbitration. *Id.* at 554; *see also Aviles v. Russell Stover Candies, Inc.*, 559 F. App'x 413, 414–15 (5th Cir. 2014) ("Given that Aviles does not challenge the delegation provision itself specifically, her general claim that, because the arbitration procedures allegedly may be modified unilaterally by Russell Stover, her agreement to arbitrate is illusory, and therefore unenforceable, must be submitted in the first instance to the arbitrator.").

The Supreme Court understood the consequences of enforcing arbitration and delegation provisions even where a party challenges the contract in which they appear:

> It is true, as respondents assert, that the *Prima Paint* rule permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void. But it is equally true that respondents' approach permits a court to deny effect to an arbitration provision in a contract that the court later finds to be perfectly enforceable. *Prima Paint* resolved this conundrum—and resolved it in favor of the separate enforceability of arbitration provisions.

*Buckeye*, 546 U.S. at 448–49. That line must be respected here, where Bailey challenges the change-in-terms clause that applies to the whole cardmember agreement. Because her dispute is not specific to the arbitration or delegation provision, a court cannot decide it.

## CONCLUSION

The decision below should be reversed and remanded with instructions to compel arbitration.

## ORAL ARGUMENT STATEMENT

Appellant Mercury Financial, LLC requests oral argument.


Dated: March 8, 2024                    Respectfully submitted,

                                        */s/ Matthew A. Fitzgerald*
                                        Matthew A. Fitzgerald
                                        Bryan A. Fratkin
                                        Katherine E. Lehnen
                                        McGuireWoods LLP
                                        Gateway Plaza
                                        800 East Canal Street
                                        Richmond, VA 23219
                                        T: (804) 775-4716
                                        F: (804) 698-2251
                                        mfitzgerald@mcguirewoods.com
                                        bfratkin@mcguirewoods.com
                                        klehnen@mcguirewoods.com

                                        *Counsel for Appellant*
                                        *Mercury Financial, LLC*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the length limitation of Fed. R. App. P. 32(a)(7)

because:

- This brief does not exceed 30 pages and contains 6,674 words,

  excluding the parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface and type style requirements of Fed. R.

App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because:

- This brief has been prepared in a proportionally spaced 14-point

  Times New Roman font using Microsoft Word.

*/s/ Matthew A. Fitzgerald*
Matthew A. Fitzgerald

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2024, the foregoing was filed with the Clerk of the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system, which will also serve counsel of record.

<em>/s/ Matthew A. Fitzgerald</em><br>Matthew A. Fitzgerald