**No. 23-2133**

In the

# United States Court of Appeals
## For the Fourth Circuit

_____

ANGELITA BAILEY,
on her own behalf and on behalf of all others similarly situated,

*Plaintiff-Appellee,*

v.

MERCURY FINANCIAL, LLC,

*Defendant-Appellant.*

_____

On Appeal from the United States District Court
for the District of Maryland
Honorable Deborah K. Chasanow, Senior District Judge
Case No. 8:23-cv-00827-DKC

_____

**REPLY BRIEF OF APPELLANT**

_____

Matthew A. Fitzgerald
Bryan A. Fratkin
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4716
F: (804) 698-2251

June 27, 2024

# TABLE OF CONTENTS

**Page**

ARGUMENT ....................................................................................1

I.     The arbitration provision is enforceable under Maryland law. ....................1

    A.     This issue was not waived in the district court. ...................................1

    B.     The arbitration provision complies with the *Cheek* rule and should be enforced............................................................................ 3

        i.     The contract language here makes a binding promise...............4

        ii.    "When required by law" means when required by law *to make this agreement enforceable*. ..............................................6

        iii.   Reading Maryland law into this contract supports it being enforceable. ................................................................9

        iv.    This is not a mere agreement to perform an existing public duty....................................................................12

    C.     The change clause does not allow retroactive changes.....................14

II.    Bailey's challenge is to contract enforceability, not formation, and so must be arbitrated. ............................................................................17

    A.     This issue was not waived in the district court. .................................17

    B.     Because Bailey embraces the Cardmember Agreement, her challenge is to the enforceability, not formation, of the arbitration and delegation clauses. ....................................................18

CONCLUSION ...................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apex Hosiery Co. v. Leader*,
  310 U.S. 469 (1940)...................................................................10

*Arnold v. Homeaway, Inc.*,
  890 F.3d 546 (5th Cir. 2018) ..............................................18, 19, 20

*Baker v. Bristol Care, Inc.*,
  450 S.W.3d 770 (Mo. 2014) ....................................................16

*Berger v. Burkoff*,
  92 A.2d 376 (Md. 1952) ........................................................13

*Canteen v. Charlotte Metro Credit Union*,
  __ S.E.2d __, 2024 WL 2338525 (N.C. 2024) ................................17

*Carey v. 24 Hour Fitness, USA, Inc.*,
  669 F.3d 202 (5th Cir. 2012) ....................................................16

*Cheek v. United Health Care of Mid-Atlantic, Inc.*,
  378 Md. 139 (2003) .......................................... 2, 3, 4, 5, 9, 10, 11, 13

*Coady v. Nationwide Motor Sales Corp.*,
  32 F.4th 288 (4th Cir. 2022) ...............................................3, 5, 11

*Coinbase, Inc. v. Suski*,
  144 S. Ct. 1186 (2024).....................................................18, 19, 21

*Dumais v. Am. Golf Corp.*,
  299 F.3d 1216 (10th Cir. 2002) ...................................................5

*Floss v. Ryan's Family Steak Houses, Inc.*,
  211 F.3d 306 (6th Cir. 2000) .....................................................5

*Garfinkel v. Schwartzman*,
  254 A.2d 667 (Md. 1969) ........................................................7

*John Deere Constr. & Forestry Co. v. Reliable Tractor*,
  406 Md. 139 (2008) ...........................................................11

ii

*Johnson v. Cont'l Fin. Co., LLC*,
690 F. Supp. 3d 520 (D. Md. 2023) ............................................................17, 18

*Kelley Constr. Co. v. Washington Suburban Sanitary Comm'n*,
247 Md. 241 (1967) ........................................................................................12

*Lema v. Bank of Am.*,
375 Md. 625 (2003) ........................................................................................11

*Lyons v. PNC Bank*,
26 F.4th 180 (4th Cir. 2022) ...........................................................................11

*Moodie v. Kiawah Island Inn Co., LLC*,
124 F. Supp. 3d 711 (D.S.C. 2015) .................................................................13

*Morrison v. Amway*,
517 F.3d 248 (5th Cir. 2008) ..........................................................................16

*Murray v. United Food & Com. Workers Int'l Union*,
289 F.3d 297 (4th Cir. 2002) ..........................................................................10

*Noohi v. Toll Bros.*,
708 F.3d 599 (4th Cir. 2013) ..........................................................................10

*Parkway 1046, LLC v. U.S. Home Corp.*,
961 F.3d 301 (4th Cir. 2020) ..........................................................................15

*Prince George's County v. Brown*,
348 Md. 708 (1998) ..........................................................................................6

*Puckett v. United States*,
556 U.S. 129 (2009) ..........................................................................................3

*Questar Builders, Inc. v. CB Flooring, LLC*,
410 Md. 241 (2009) ..................................................................................7, 8, 16

*Rent-A-Center, Inc. v. Jackson*,
561 U.S. 63 (2010) ..........................................................................................21

*Royston, Rayzor, Vickery & Williams LLP v. Lopez*,
467 S.W.3d 494 (Tex. 2012) ...........................................................................20

iii

*Shepherd v. Burson*,
427 Md. 541 (2012) ...................................................................15

*Smith v. Collins*,
964 F.3d 266 (4th Cir. 2020) ..................................................14

*Stamatiades v. Merit Music Serv.*,
210 Md. 597 (1956) ...................................................................5

*United States v. Jordan*,
509 F.3d 191 (4th Cir. 2007) ....................................................7

*United States v. Pratt*,
915 F.3d 266 (4th Cir. 2019) ...............................................3, 18

*United States v. Scott*,
705 F.3d 410 (9th Cir. 2012) ..................................................18

## Other Authorities

Black's Law Dictionary (11th ed. 2019) ...........................12, 15

2 Corbin on Contracts § 5.28 (1995) .........................................8

Merriam-Webster.com ...............................................................15

Restatement (Second) of Contracts § 77 (1981) .......................6

3 Williston, *A Treatise on the Law of Contracts* (4th ed. 1992)..........................5, 13

11 Williston, *A Treatise on the Law of Contracts* (4th ed. 1992).............................7

## ARGUMENT

### I.    The arbitration provision is enforceable under Maryland law.

The provision at issue here is meant to acknowledge varying state law on whether changes to an arbitration agreement must come with advance notice or not, and to promise compliance in states that do require it.  There is no evidence or allegation here that Mercury has ever changed its arbitration provision in Maryland without the "advance written notice" and "right to reject the changes" that the contract envisions.  JA284.  This Court should reverse and instruct that the arbitration provision be enforced.[1]

#### A.    This issue was not waived in the district court.

Bailey first urges that Mercury waived its argument that Maryland law would enforce this arbitration agreement.  Resp. Br. 14-17.  This argument fails.

First, most simply, Mercury *did* contend in the district court that its arbitration agreement was not illusory under Maryland law.  JA244-248 (an entire section of Mercury's brief was titled "The Arbitration Provision is Not Illusory Under Maryland Law").  Mercury cited *Cheek* and explained the *Cheek* rule. JA244 ("*Cheek* … held that an arbitration agreement could not be enforced because it allowed the defendant to unilaterally modify the arbitration agreement at

---

[1] Mercury acknowledges the similar appeal proceeding now in this Court in *Johnson v. Continental*, No. 23-2047.  The arguments made by Continental apply equally to Mercury.

any time 'with or without notice'") (quoting *Cheek v. United Health Care of Mid-Atlantic, Inc.*, 378 Md. 139, 149 (2003)); *contra* Resp. Br. 14 ("Mercury never argued in the District Court that Maryland law—or the *Cheek* rule—required advance notice of changes").

Mercury then argued that this case is "unlike *Cheek*" because the language of its arbitration agreement is dispositively different.  JA244.  In short, Mercury contended that "Because the "Changes to Your Account" provision in the Cardmember Agreement does not allow Mercury to change the arbitration provision at its sole discretion without providing notice to [the] cardholder … the Arbitration Provision binds both Parties and is not illusory."  JA247.  So Mercury acknowledged the *Cheek* rule and what it requires, and contended that its arbitration provision does not violate the *Cheek* rule, but in fact does bind Mercury to provide advance written notice and a right to reject changes.

These are the same arguments that Mercury presents on appeal.  Bailey even admits that the current issue is whether the contract language here materially differs from *Cheek*—which is exactly what Mercury argued below.  *Compare* Resp. Br. 18 ("So the question is, does the 'when required by law' phrase make the arbitration promise here materially different from the illusory promise in *Cheek*?") *with* JA244 ("This case is unlike *Cheek* . . . there is no such ['with or without notice'] language here").

Second, the district court's opinion addressed the proper governing law at some length. Issues are preserved for appellate review if they are "pressed or passed upon" in the district court. *United States v. Pratt*, 915 F.3d 266, 271 n.4 (4th Cir. 2019). Waiver rules prevent litigants from "sandbagging" the court, and ensure that the trial court has the "opportunity to consider and resolve" the pertinent issues. *Puckett v. United States*, 556 U.S. 129, 134 (2009). Here, the district court found the governing law in Mercury's brief and quoted the governing principle. JA296. There was no sandbagging or lost opportunity to consider the issues. The district court had the pertinent law in front of it, but just failed to apply it correctly. The issue was amply "passed upon" to preserve it for appeal. *Pratt*, 915 F.3d at 271 n.4.

**B.    The arbitration provision complies with the *Cheek* rule and should be enforced.**

A proper analysis of this issue has just a few steps.

First, Maryland has an unusual rule of law which requires that an arbitration provision must have its own independent consideration, meaning if it allows unilateral changes, it must come with a promise of advance notice of any such changes. *Cheek*, 378 Md. at 149; *Coady v. Nationwide Motor Sales Corp.*, 32 F.4th 288, 291-92 (4th Cir. 2022). The parties agree on this. *See* Resp. Br. 1.

Second, the consequence of violating this rule is that the arbitration provision will be found illusory and not enforced. *Cheek*, 378 Md. at 149. The

parties agree on this, too.  After all, Bailey asks that Mercury face that consequence now.  Resp. Br. 1-2.

Third, the arbitration provision here promises "advance written notice of any changes and any right to reject the changes" "when required by law."  JA284.  This fits Maryland law, which requires a promise to give advance notice.  And it binds Mercury to do something—to give the advance written notice and a chance to reject changes—which in turn creates specific consideration for the arbitration provision, even apart from the rest of the Cardmember Agreement.  That should be the entire analysis.  The district court can be reversed on these three steps alone.

### i.    The contract language here makes a binding promise.

Bailey's contrary argument boils down to this: a contract that says one party can change its terms "at its sole and absolute discretion, at any time with or without notice," *Cheek*, 378 Md. at 143, means the same thing as a contract that says "when required by law, we will provide advance written notice of any changes and any right to reject the changes."  JA284.  *See* Resp. Br. 21 (urging that Mercury "is in the same position as the defendant in *Cheek*, and in *Coady*").

Bailey cites no case from the Maryland appellate courts holding that these two mean the same thing.  Mercury is unaware of any.

None of the cases Bailey cites had change clauses like the one in this case.

| |
|---|
| *Cheek*: "United Healthcare reserves the right to alter, amend, modify, or revoke the Policy at its sole and absolute discretion at any time with or without notice." 378 Md. at 142-43. |
| *Coady*: "The Modification Clause here reserves Nationwide's ability to change, abolish, or modify existing policies, procedures or benefits applicable to employees as it may deem necessary with or without notice." 32 F.4th at 292. |
| *Dumais v. Am. Golf Corp.*: The court did not quote the exact language, and there were conflicting provisions, but it seems the employer "reserve[d] the right to amend, supplement, or revise everything in the Handbook" which included the arbitration provision, with no apparent provision for notice to the employee. 299 F.3d 1216, 1217 (10th Cir. 2002). |
| *Floss v. Ryan's Family Steak Houses, Inc.*: "EDSI has reserved the right to alter the applicable rules and procedures without any obligation to notify, much less receive consent from, Floss and Daniels." 211 F.3d 306, 315-16 (6th Cir. 2000). |

What these illusory agreements all have in common is that the company made no promise at all. It retained complete freedom to change or revoke the entire agreement without even *telling* the other contracting party. *See Stamatiades v. Merit Music Serv.*, 210 Md. 597, 614 (1956) ("It is only where the option reserved to the promisor is unlimited that his promise becomes illusory").

On the other hand, the language here *does* constrain Mercury. Mercury has no "unlimited" freedom to change terms—it has promised advance written notice of changes and a right to reject them, when the law requires. That promise is conditioned on the law calling for notice. But a conditional promise is still a promise. It is a constraint adequate for consideration. 3 Williston, *A Treatise on the Law of Contracts* § 7:18, at 346 (4th ed. 1992) ("A conditional promise may be

consideration . . . if, as events turn out, the condition is not satisfied, and the

promise calls for no performance, there is no failure of consideration.") (quoted in

*Prince George's County v. Brown*, 348 Md. 708, 716 (1998)).  The Restatement of

Contracts is even more clear that "[a] limitation on the promisor's freedom of

choice . . . may be an implicit term of the promise, or it may be supplied by law."

Restatement (Second) of Contracts § 77 (1981).

Bailey cites no precedential case finding illusory any contract language like

the language here.  This Court, sitting in diversity on an issue of Maryland law,

should not be the first.

### ii.    "When required by law" means when required by law *to make this agreement enforceable.*

Bailey contends that "when required by law" cannot mean "when required

by law to make this agreement enforceable."  Resp. Br. 25-26.  She argues that

reading it that way would "rewrite . . . [a] clear and unambiguous" contract term

and would render it useless.  Resp. Br. 26.  That argument fails, for two reasons.

First, reading the provision to mean "when required by law *to make this*

*agreement enforceable*" would not rewrite or erase any contract term.  If it did,

Bailey's own view—that "when required by law" means "when required by law

*other than contract law principles*"—would be just as improper.  *See* Resp. Br. 12,

18, 19, 26 (repeatedly arguing that some law "independent" of contract law

principles is required).  Courts "do not write the contracts of the parties

6

retroactively," but they do "construe the terms of the contract the parties have previously signed." *United States v. Jordan*, 509 F.3d 191, 195 (4th Cir. 2007).

Second, reading a contract term as making an agreement enforceable is a *favored interpretation* under Maryland law. "An interpretation which renders a contract valid and its performance possible will be preferred to one which makes it void." *Garfinkel v. Schwartzman*, 254 A.2d 667, 673 (Md. 1969); *see also* 11 Williston, *A Treatise on the Law of Contracts* § 32:11 (4th ed. 1992) ("an interpretation which renders a contract lawful is preferred over one which renders it unlawful").

Maryland law works hard to save contracts assailed as illusory. In *Questar Builders, Inc. v. CB Flooring, LLC*, the Maryland Supreme Court[2] noted that finding a contract illusory is "a disfavored interpretation in Maryland contract law." 410 Md. 241, 277 (2009). In that case, the court addressed a construction contract that allowed one party to terminate for "convenience," with no stated limitation beyond paying for goods already delivered. The contract was challenged as illusory because it placed no bounds on the party allowed to terminate.

---

[2] At the time, called the Maryland Court of Appeals; this brief uses Maryland Supreme Court throughout to refer to the highest appellate court in Maryland, for clarity.

The *Questar Builders* Court quoted Corbin on Contracts: "the tendency of the law is to avoid the finding that no contract arose due to an illusory promise when it appears that the parties intended a contract."  410 Md. at 273 (quoting 2 Corbin on Contracts § 5.28 (1995)).  That is, "courts generally prefer a construction of a contract that which will make the contract effective rather than one which will make it illusory or unenforceable."  410 Md. at 273.  The court then distinguished the contract language in *Cheek*, which unmistakably granted "sole and absolute discretion at any time with or without notice," 410 Md. at 278, from the language at hand, which simply referred to termination for convenience and was silent on any limits.  The court reiterated that interpreting contract language as endlessly broad and thus illusory was "not the preferred" way to interpret it.  410 Md. at 279.

To avoid ruling that the "termination for convenience" contract was illusory, the Maryland Supreme Court read into it a duty to terminate only in good faith.  410 Md. at 261.  In doing this, the court essentially *constructed* an enforceable promise out of Maryland contract law and applied it to a silent contract to uphold that contract.

By comparison, it is a far easier inference that "when required by law" in this contract means "when required by law *to make the contract enforceable*."  After all, the terms "when required by law" and specifying advance written notice

8

and a right to reject changes, on their face, refer to the applicable body of law—including Maryland contract law that could invalidate the agreement.

In *Cheek*, the contract provision allowed changes or revocation at one party's "sole and absolute discretion at any time with or without notice." 378 Md. at 142-43.  There was no way to reasonably read that provision as constraining the rights of that party at all.  378 Md. at 149 (the "plain and unambiguous language of the clause appears to allow United to revoke the [arbitration policy] even after arbitration is invoked").

On the other hand, the contract language here acknowledges that the law in some places may require advance notice of any changes to an arbitration agreement, and makes a clear effort to comply by promising advance written notice and a right to reject such changes.  The language is dispositively different, and this Court should read it as making an enforceable promise.

### iii.    Reading Maryland law into this contract supports it being enforceable.

Bailey also contends that Maryland law must not actually "require" a promise to give advance notice of changes, because if it did, notice would be implied in all contracts, and *Cheek* would have come out differently.  Resp. Br. 3, 18-21.  This argument does not make sense.[3]

_____

[3] Bailey seems to argue both that (1) Maryland law *does* require advance notice of changes to arbitration provisions, and this agreement fails that test and thus cannot

First, every state has a body of contract law, both statutory and common law. A contract, on its face, may comply with the law or not. If the contract does not comply with the law, the parties face various consequences, including that the contract may be ruled unenforceable. For instance, a contract with unconscionable terms would not be enforced, nor would a contract calling for an illegal act. *See, e.g.*, *Murray v. United Food & Com. Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002) ("equity may require invalidation of an arbitration agreement that is unconscionable"); *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 497 (1940) ("agreements to fix prices, divide marketing territories, apportion customers, restrict production and the like practices . . . such contracts were deemed illegal and were unenforceable at common law"). The legions of cases finding contracts unenforceable prove that a contract's text and the requirements of the law are not always the same. *Contra* Resp. Br. 19.

---

be enforced, and (2) that Maryland law does *not* "require[] advance notice of changes." Resp. Br. 19. These arguments conflict and do not make sense. The correct way to understand this is that Maryland has an unusual requirement that arbitration provisions have their own consideration, independent from the rest of the agreement. *See Cheek*, 378 Md. at 157-59 ("We disagree with cases from other jurisdictions that determine that consideration for an underlying contract can also serve as consideration for an arbitration agreement within the contract" and citing cases from Alabama, New York, Florida, and the 2d, 3d, 6th, and 8th Circuits); *Noohi v. Toll Bros.*, 708 F.3d 599, 607 (4th Cir. 2013) (discussing Maryland's unusual rule "reject[ing] the notion that consideration for an underlying contract can serve as consideration for an arbitration provision within that contract"). The arbitration provision here satisfies this unusual rule by promising, when the law requires, that advance notice and a right to reject changes.

Thus, *Cheek* is an ordinary application of the rule that some contracts violate the law and so are not enforceable. Maryland requires arbitration agreements that allow one party to change their terms to promise advance notice of changes. The *Cheek* agreement failed that test, because it expressly allowed changes "with or without notice" at any time. 378 Md. at 149. The arbitration agreement was thus unenforceable. Arbitration agreements now are tested under the *Cheek* rule. *See, e.g.*, *Coady*, 32 F.4th at 292. The agreement here passes the *Cheek* test because it does promise advance written notice and a right to reject changes.

Second, the rule that the law is generally imputed into contracts further supports Mercury. "[I]t is well established in Maryland that laws subsisting at the time of the making of a contract enter into and form a part thereof as if expressly referred to or incorporated in its terms." *Lyons v. PNC Bank*, 26 F.4th 180, 189 (4th Cir. 2022) (quoting *John Deere Constr. & Forestry Co. v. Reliable Tractor*, 406 Md. 139, 146 (2008)).

The rule that existing laws form a part of the contract means that legal requirements will be read into contracts that are silent or ambiguous about them. *E.g.*, *John Deere Constr. & Forestry Co.*, 406 Md. at 146 (describing the rule as: "all applicable or relevant laws must be read into the agreement of the parties just as if expressly provided by them, *except where a contrary intention is evident*") (emphasis added); *Lema v. Bank of Am.*, 375 Md. 625, 645 (2003) (same) (reading

duties of good faith and ordinary care into a contract when "nothing in the
language of the . . . Agreement . . . explicitly exculpates the Bank from its duties of
good faith and ordinary care").

This rule supports Mercury. The contract here specifically acknowledges
that the law might require notice of changes to the arbitration provision, and
promises advance written notice and a right to reject them if so. Such an
agreement is a perfect example of a contract into which Maryland law (requiring
notice) readily can be read.

After all, Maryland courts read contracts in a way that would give them
effect, not erase or obliterate them. "The courts will prefer a construction which
will make the contract effective rather than one which will make it illusory or
unenforceable." *Kelley Constr. Co. v. Washington Suburban Sanitary Comm'n*,
247 Md. 241, 247 (1967).

> ### iv.   This is not a mere agreement to perform an existing public duty.

Bailey contends that a promise to obey the law is not consideration because
everyone already has a duty to obey the law. Resp. Br. 21, 30 (citing Williston on
Contracts). That principle does not apply here.

The arbitration agreement is not a simple promise to obey the law. That is, it
is not a promise to do what Mercury has an existing "public duty" to do. *See*
Black's Law Dictionary (11th ed. 2019) (defining "illusory consideration" as "a

promise to perform a public duty" or to "perform under a preexisting contract"). 3 Williston on Contracts § 7:43 (4th ed.) (repeatedly limiting this rule to what "the promisor is already bound to do" for some independent reason).

There is no free-floating public duty that requires Mercury or any other company to give others advance notice of its actions. This is not a promise by a parent to support a child, or a promise not to violently riot, a promise to pay taxes that have been assessed, or a promise to release a paid-off mortgage. 3 Williston § 7:43 (examples provided and supported with case law). What all of these have in common is that there was a duty to behave a certain way apart from the contract at issue. "The general rule is that a promise to do . . . that which a party to a contract is already under legal obligation to do, is not a valid consideration." *Berger v. Burkoff*, 92 A.2d 376, 379 (Md. 1952) (holding that an oral agreement in which the alleged consideration was agreeing to abide by an existing written contract lacked consideration). *See also Moodie v. Kiawah Island Inn Co., LLC*, 124 F. Supp. 3d 711, 727 (D.S.C. 2015) (describing the rule as "if a party is legally obligated to do something *prior to entering into the contract*, a promise to perform that legal obligation is not consideration for the contract.") (emphasis in original).

Instead, the Maryland requirement for a promise of notice of changes is a specific consideration rule embedded in contract law. Not making such a promise in an arbitration agreement means it will not be enforced. *Cheek*, 378 Md. at 149.

13

No one would say there is a "public duty" to give or promise notice, any more than there is a "public duty" to put real estate contracts in writing, or a public duty not to make favorable contract terms that could be unconscionable. Contract law does not impose public duties like that. It simply imposes constraints and may not enforce contracts that violate those rules. That still means that in the relevant sense the law "requires" contracts to conform, on pain of being unenforced. But it creates no preexisting public duty that converts promises to abide by those legal principles into meaningless terms.

C.    The change clause does not allow retroactive changes.

Bailey also contends that, even assuming notice is promised and provided, the change clause allows retroactive changes and so is illusory. Resp. Br. 27-29. The district court did not address this argument. JA301 ("It is unnecessary to address the parties' remaining arguments about whether the change-in-terms provision allows for unilateral retroactive modification"). This Court should reject or decline to address this alternative ground for affirmance. *Smith v. Collins*, 964 F.3d 266, 282 (4th Cir. 2020) (vacating and remanding while noting that the Court "need not consider an alternative ground for affirmance that was not addressed by the district court").

If the Court elects to address this issue, Bailey's arguments are incorrect.

The change clause here does not allow unilateral retroactive changes to the arbitration provision. Instead, it promises "*advance* written notice" and a "right to reject the changes." JA284 (emphasis added). No court would read that clause as allowing unilateral retroactive changes.

First, the ordinary meaning of "advance" is "before" or "ahead of time." *See* Merriam-Webster.com (defining the adjective "advance" as "made, sent, or furnished ahead of time" or "going or situated before"); Black's Law Dictionary (11th ed. 2009) (defining "advance notice" as "notice given beforehand"). Courts use it the same way. For instance, in *Shepherd v. Burson*, the Maryland Supreme Court repeatedly described a written notice that must be sent to the borrower weeks before foreclosure proceedings begin as "advance written notice." 427 Md. 541, 543-45 (2012).

Bailey's contrary assertion that "advance" notice can be given of retroactive changes stretches the meaning of "advance" beyond reason. Under Bailey's view, for instance, Mercury could announce in "advance" that it is increasing the interest rate owed on past credit balances paid off months ago. No reasonable person would consider that "advance" notice. *Parkway 1046, LLC v. U.S. Home Corp*., 961 F.3d 301, 307 (4th Cir. 2020) (holding that the question "from the language of the agreement" is "what a reasonable person in the position of the parties would have meant at the time it was effectuated"). And even if the language could be

read so broadly, it would not be.  The general obligation to act in good faith and fairly also "governs the manner in which a party may exercise the discretion accorded to it by the terms of the agreement."  *Questar Builders, Inc.*, 410 Md. at 273.

Second, the "right to reject the changes" also makes this case different from any that Bailey cite*s*.  Resp. Br. 27-29.  The shared concern in those cases—*Carey*, *Morrison*, and *Baker*—is that a party could promise to arbitrate disputes, have a dispute, even begin arbitration, and then suddenly renege.  *See Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 209 (5th Cir. 2012) ("this could still arguably allow [the company] to avoid its promise to arbitrate as to claims that were already in progress"); *id.* at 206 (describing *Morrison v. Amway* as "Amway was able to amend its policy and thus renege on its promise to arbitrate even in the context of disputes already underway." *Id.* at 206 (citing 517 F.3d 248, 257 (5th Cir. 2008)); *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 777 (Mo. 2014) (suggesting that "if in the course of an ongoing arbitration process, Bristol concluded that the process was not favorable, Bristol could provide Baker notice that, effective in 30 days, it no longer would consider itself bound by the results of the arbitration").[4] These

---

[4] For its part, *Baker* was decided 4-3 even under Missouri law.  Three justices in *Baker* believed that court would never interpret the contract as allowing Bristol to renege on its promise to arbitrate existing disputes "should Bristol Care try to alter its obligations to Ms. Baker under this agreement with respect to the claims she has already asserted."  450 S.W.3d at 788 (Wilson, J., dissenting).  More recently, the

concerns are thoroughly eliminated by the contract offering a "right to reject the changes." JA284.

## II. Bailey's challenge is to contract enforceability, not formation, and so must be arbitrated.

### A. This issue was not waived in the district court.

Bailey first contends that Mercury waived this argument by failing to present it in the district court. Resp. Br. 30-34. But the district court's opinion rejects Bailey's argument.

The court noted that Bailey's "challenge to whether the parties have agreed to arbitrate the dispute necessarily encompasses the issue of whether the parties have agreed to delegate arbitrability to the arbitrator." JA289 n.4 (adding that Mercury had "acknowledged" that the same arguments that apply to the arbitration provision apply to the delegation clause embedded in it). The court then ruled (incorrectly) that Mercury "conflates the concepts of contract validity and contract formation." JA290. "Plaintiff argues that no contract to arbitrate this dispute exists, not that an arbitration contract exists but is unenforceable due to defects in the underlying contract." JA290-291 (citing *Johnson v. Cont'l Fin. Co., LLC*, 690

_____

*Baker* majority was rejected by the sole court in this circuit that has considered it. *See Canteen v. Charlotte Metro Credit Union*, __ S.E.2d __, 2024 WL 2338525, at *6 (N.C. 2024) (holding that a contract that allowed unilateral changes to an arbitration agreement was not illusory because the implied covenant of good faith and fair dealing would prevent grossly unfair changes).

F. Supp. 3d 520, 526-27 (D. Md. 2023), for the holding that contract *formation* is the issue here).

Bailey cannot succeed by claiming waiver based on briefing at the district court when the court itself rejected Mercury's position on the substance. *See Pratt*, 915 F.3d at 271 n.4 (an issue is preserved for appellate review "if pressed or passed upon" in the trial court). Nor did Bailey assert waiver or abandonment in front of the district court. *See* JA267-281 (14-page surreply never arguing waiver of any delegation clause argument); *United States v. Scott*, 705 F.3d 410, 415 (9th Cir. 2012) ("A party who fails to assert a waiver argument forfeits—and therefore implicitly waives—that argument.").

**B.    Because Bailey embraces the Cardmember Agreement, her challenge is to the enforceability, not formation, of the arbitration and delegation clauses.**

Bailey points out that courts, not arbitrators, must address contract formation issues. Resp. Br. 35-37. But the delegation and arbitration clauses here present an enforceability, not a formation, issue. Resp. Br. 37 (quoting *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 554 (5th Cir. 2018) ("we distinguish between 'validity' or 'enforceability' challenges and 'formation' or 'existence' challenges")).[5]

---

[5] If this Court determines that the issue at hand is formation, not enforceability, and that Bailey's challenge "applies 'equally' to the whole contract and to an arbitration or delegation provision," then, "a court must address that challenge." *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1194 (2024).

The facts are not in dispute.  All agree that the Cardmember Agreement exists.  All agree that it contains many terms, that both parties assented to it, and both parties abided by it for many months.  Mercury serviced a credit relationship for Bailey, who used credit and paid interest for it.  The Cardmember Agreement was never superseded by any other contract between the parties.  *Cf. Coinbase*, 144 S. Ct. at 1193 (holding that a court should consider supersession issues, as they go to the existence of the contract).  All agree that the Cardmember Agreement calls for arbitration between Bailey and Mercury, and delegates arbitrability issues to the arbitrator.  Bailey's brief does not deny any of this.  In fact, she has repeatedly embraced the Cardmember Agreement and relies on it to make her substantive claim against Mercury.  Op. Br. 22-23.

Under these circumstances, the Court should not find that there is a "formation" issue with any part of the Cardmember Agreement.  Even if the arbitration and delegation provisions did lack consideration, that would best be viewed as a challenge to their *enforcement*, not their *existence*.

*Arnold v. Homeaway, Inc.* addressed this same scenario.  In that case, Arnold did "not dispute the existence of a contract with Homeaway."  890 F.3d at 551.  While accepting the rest of the contract, Arnold singled out the arbitration provision and argued it was illusory for absence of consideration.  *Id.*  The Fifth Circuit readily acknowledged that illusoriness can be a contract formation issue.

*Id.* at 550-51 (citing treatises). But the Fifth Circuit held that given the agreement that a binding broader contract existed, "Arnold's allegation that a particular provision of the contract is illusory is properly considered a validity challenge rather than a formation challenge." *Id.* at 551. That conclusion applies equally here.

Bailey objects that *Arnold* applied Texas law. Resp. Br. 39. But both Texas and Maryland consider "an arbitration provision … illusory if the contract permits one party to legitimately avoid its promise to arbitrate." *Arnold*, 890 F.3d at 551 (quoting *Royston, Rayzor, Vickery & Williams LLP v. Lopez*, 467 S.W.3d 494, 505 (Tex. 2012)). Neither Texas nor Maryland have held that an illusoriness challenge must *always* be a contract formation issue, rather than an enforceability issue. In fact, precedents from Maryland and this Court all use the term "unenforceable" repeatedly to refer to arbitration provisions that may be illusory under the *Cheek* rule. Op. Br. 24-25 (citing *Cheek*, *Coady*, and *Noohi*). Even Public Justice's amicus brief concedes that illusoriness may be an enforceability, and not always a formation, issue. Amicus Br. 15 (also noting that this Court in *Amos* "apparently treat[ed] illusoriness as a validity question [not a formation one]"). When a plaintiff affirms and relies on the rest of the agreement to support their claims, an illusoriness challenge to an embedded arbitration provision is "in the nature of a validity challenge rather than a formation challenge." *Arnold*, 890 F.3d at 551.

20

*Coinbase* does not "undermine" this analysis. *Contra* Doc. 29-1, Bailey Rule 28(j) Letter, at 2 (June 17, 2024). In *Coinbase*, the question was whether a second contract between the parties had superseded and thus voided the arbitration and delegation clauses in the first contract. *Coinbase*, 144 S. Ct. at 1191. On those unusual facts, the challenge was to the *existence* of an arbitration and delegation contract, not just to the enforceability of those terms. *Id.* at 1194 n.* (noting the argument was over whether any arbitration agreement still existed after the superseding contract). "The substance of the parties' supersession dispute is whether there is an agreement to arbitrate." *Id*. at 1193.

In contrast, here there is no question that the arbitration and delegation clauses exist—in other words, that they were "agreed to" and never voided by any later agreement. *Id*. at 1191 ("a court needs to decide what the parties have agreed to"). The question here is only whether the arbitration and delegation provisions that the parties agreed to are enforceable—in other words, whether they are "legally binding." *Rent-A-Center, Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010) (distinguishing between whether an "agreement to arbitrate . . . is legally binding" and "whether it was in fact agreed to."). That question is properly sent to arbitration under the delegation clause.

## CONCLUSION

This Court should reverse the district court and remand with instructions to compel arbitration.

Dated: June 27, 2024

Respectfully submitted,

*/s/ Matthew A. Fitzgerald*
Matthew A. Fitzgerald
Bryan A. Fratkin
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4716
F: (804) 698-2251
mfitzgerald@mcguirewoods.com
bfratkin@mcguirewoods.com

*Counsel for Appellant*
*Mercury Financial, LLC*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the length limitation of Fed. R. App. P. 32(a)(7) because:

- This brief contains 5,255 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because:

- This brief has been prepared in a proportionally spaced 14-point Times New Roman font using Microsoft Word.

*/s/ Matthew A. Fitzgerald*
Matthew A. Fitzgerald

**CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2024, the foregoing was filed with the Clerk of the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system, which will also serve counsel of record.

*/s/ Matthew A. Fitzgerald*
Matthew A. Fitzgerald